## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Johnson Publishing Company, LLC, | ) | Case No. 19-10236 |
| | ) | |
| Debtor. | ) | Honorable Jack B. Schmetterer |
| | ) | |
| | ) | Hearing Date: May 16, 2019, 11:00 AM |
| | ) | |

## [INTERIM] ORDER (I) AUTHORIZING THE
## CHAPTER 7 TRUSTEE TO OBTAIN POSTPETITION FINANCING
## ON A SENIOR SECURED SUPERPRIORITY BASIS PURSUANT TO
## 11 U.S.C. §§ 105, 361, 362, 363, AND 364, AND (II) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[1], dated May 2, 2019, of Miriam R. Stein, not individually but solely as Chapter 7 Trustee (the "**Trustee**") in the above-captioned case (the "**Chapter 7 Case**"),  pursuant to sections 102, 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Illinois (the "**Local Bankruptcy Rules**"), seeking, among other things, entry of an interim order (the "**Interim Order**"):

 i. Authorizing the Trustee to obtain postpetition funding (the "**Financing**") with superpriority claims and first priority priming liens senior to any prepetition or postpetition liens, pursuant to sections 105, 361, 362, 363, and 364 of the Bankruptcy Code, from Capital Holdings V, LLC (the "**Lender**" or "**Capital**

---

[1]    Each capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion.

Holdings"), in accordance with the Loan Documents (defined below), subject to the provisions outlined in this Interim Order; and

ii.    Granting related relief;

the Court having considered the Motion, examined the exhibits attached thereto, and completed the Interim Hearing (defined below) as provided under section 364 of the Bankruptcy Code, Bankruptcy Rule 4001(c), and applicable Local Bankruptcy Rules, and finding the Trustee provided notice as set forth below to all necessary parties and that no further notice is required;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING,
THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT
AND CONCLUSIONS OF LAW:

A.    **Petition Date**.  Commencing on April 9, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Illinois (the "**Bankruptcy Court**" or this "**Court**").  Thereafter, the Trustee was appointed.

B.    **Jurisdiction**.  This Court has core jurisdiction over the Chapter 7 Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The statutory predicates for relief sought herein are sections 102, 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 6004 and the Local Bankruptcy Rules.

C.    **Notice**.  Due and appropriate notice of the Motion, the relief requested therein, and the Interim Hearing (defined below) will be served by the Trustee on all necessary parties by service of this Order forthwith for hearing of any Objections thereto on Tuesday, May 23, 2019 at 11:00 a.m. in Courtroom 682.

2

D.  **Opportunity to be Heard**.  Pursuant to Bankruptcy Rule 4001, an interim hearing ("**Interim Hearing**") on the Motion was initially held before this Court on May 9, 2019 and continued to May 16, 2019 to consider entry of an earlier Interim Order.

E.  **Disposition**.  The Motion is granted on an interim basis in accordance with the terms of this Interim Order except that paragraph 3 will not be granted until May 23, 2019.  Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled for purposes of this Interim Order.

F.  **Lender's Protections**.  The Lender is committed to lending money and providing other financial accommodations to the Debtor and Trustee only on the terms and conditions and with the protections provided herein and is relying on such terms, conditions, and protections in agreeing to lend money and provide financial accommodations to the Debtor and Trustee hereunder.

G.  **Immediate Entry of the Order**.  The Trustee has requested that this Interim Order become immediately effective and enforceable upon entry, notwithstanding any provisions that may apply in Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure.  The Trustee has demonstrated good cause for the entry of this Interim Order and for this Interim Order to become immediately effective and enforceable upon entry.  Among other things, entry of this Interim Order and the immediate effectiveness and enforceability hereof upon entry will ensure the preservation of the Archive (as defined in the Motion) (the Lender's "**Collateral**") and is in the best interests of the Debtor, its creditors, and the Debtor's bankruptcy estate (the "**Estate**").  The terms of the borrowings and other financial accommodations described herein and authorized hereby are fair

3

and reasonable under the circumstances and reflect the Trustee's exercise of prudent business judgment consistent with her fiduciary duties. However, paragraph 3 will not be effectual until the May 23, 2019 hearing.

H.    **Findings Regarding the Financing**.

    i.    Good cause has been shown for the entry of this Interim Order;

    ii.    The Trustee has an immediate need to obtain the Financing, to (a) adequately insure the Archive, on terms acceptable to the Lender, (b) cover moving expenses related to moving the Archive from the Debtor's leased premises to an ICON storage facility, on terms and conditions acceptable to the Lender, (c) cover storage expenses at the ICON storage facility through July 26, 2019, on terms and conditions acceptable to the Lender, and (d) facilitate the sale of the Archive.  The access of the Trustee to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations is vital to maximizing the Debtor's estate to enable a successful sale of the Archive;

    iii.    The Trustee currently is unable to obtain financing on more favorable terms from sources other than the Lender and is unable to obtain adequate secured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Trustee is also unable to obtain secured credit allowable under section 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without the Trustee granting to the Lender the superpriority liens and claims set forth herein;

iv.  The terms of the Financing are fair and reasonable, reflect the Trustee's exercise of prudent business judgment consistent with her fiduciary duties and constitute reasonably equivalent value and fair consideration;

v.  The Financing has been negotiated in good faith and at arm's length among the Trustee and the Lender, and all of the Trustee's or the Debtor's obligations and indebtedness arising under this Interim Order and the Final Order, including without limitation, all Advances (as defined below) pursuant to the prepetition loan documents, including the Loan and Security Agreement dated May 7, 2015 and the Protective Advance Agreement dated April 5, 2019 (collectively, the "**Loan Documents**"[2]), and any other expenses or obligations (collectively, the "**Funding Obligations**"), shall be deemed to have been extended by the Lender and its affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the Funding Obligations, the Superpriority Claims, and the Financing Lien (each as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise;

vi.  Entering into this Interim Order reflects the Trustee's exercise of prudent business judgment consistent with her fiduciary duties; and

---

[2]  The Loan Documents are attached in their entirety to the Lender's Lift Stay Motion [Dkt. 19] as Exhibit A thereto; a copy of the Loan Agreement without exhibits is attached as Exhibit A to the Motion.

vii.    The Trustee has requested entry of this Interim Order pursuant to Bankruptcy
Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules.  Absent
granting the relief sought by this Interim Order, the Debtor's estate will be
immediately and irreparably harmed.  Consummation of the Financing in
accordance with this Interim Order is therefore in the best interests of the
Estate.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1.    <u>**Authorization of the Funding**</u>.

a)    The Trustee is hereby authorized to obtain and use the
Financing provided by the Lender, which shall be used only as
permitted in accordance with the budget attached hereto as <u>**Exhibit A**</u>
(the "**Budget**").  Lender shall be deemed to have consented to, and has
committed to fund,  the payment of all amounts set forth in the Budget
including any amounts from any of Lender's Collateral.   The
Financing authorized under this Order shall take the form of protective
advances in accordance with the Loan Documents (the "**Advances**")
and shall incur interest at the nondefault contract rate of 1%, as set
forth in the Loan Documents. The accrued interest and reasonable fees
and expenses (as provided in the Loan Documents) will be added to
the loan balance, the total of which shall be paid in cash at the closing
of the sale of the Archive (or as otherwise provided in this order).

b)    Subject to the terms and conditions hereof, and in
accordance with, without limitation, section 9.1(c) of the Loan and

Security Agreement dated May 7, 2015, section 3(b) of the Subordination Agreement dated as of May 7, 2015 by and among Johnson Publishing Company, LLC, Linda Johnson Rice, and Capital Holdings, and section 3(b) of the Subordination Agreement dated as of May 7, 2015 by and among Johnson Publishing Company, LLC, Desiree Rogers, and Capital Holdings, Lender shall provide the Financing to the Trustee for the benefit of the Debtor's estate by the express terms of this Interim Order and such funding shall be deemed permitted under all such agreements.

c)      Except as otherwise expressly set forth herein, the Financing shall be conclusively deemed to be Obligations under and shall be governed by the Loan Documents in all respects, and without limitation of the foregoing, shall bear interest at the applicable rate thereunder and shall be secured by the Archive. No advance made by the Lender for any purpose, including the Financing, shall be deemed an agreement to make any other payment or other accommodation to any party in the future or constitute any waiver or forbearance with respect to any Default or Event of Default (as defined in the Loan Documents).

d)      The Trustee is hereby authorized to execute, deliver and perform one or more amendments, waivers, consents, or other modifications not inconsistent with the terms of this Interim Order by filing notice of such amendment, waiver, consent, or other

7

modification with this Court. Following the filing of such notice, any party in interest may contest such amendment, waiver, consent, or other modification by filing a motion (an "**Amendment Challenge**") with this Court within fourteen (14) days of being provided notice of such amendment, waiver, consent, or other modification. Subject to the convenience of this Court's calendar, a hearing on any Amendment Challenge shall be held within five business days of the date that the Amendment Challenge is filed. If an Amendment Challenge is not timely filed and served and a hearing is not timely sought, or if the relief sought in the Amendment Challenge is denied, the amendment, waiver, consent, or other modification shall become immediately effective.

e)    In furtherance of the foregoing and without further approval of this Court, the Trustee is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees, that may be reasonably required or necessary for the Trustee's performance of its obligations hereunder and under the Budget.

2.    **Financing Lien**. As security for the Funding Obligations under this Interim Order, effective and perfected upon the date of, and through, this Interim Order and without the necessity of the execution, recordation of filings by the Debtor or Trustee of

8

mortgages, security agreements, control agreements, pledge agreements, financing statements or
other similar documents, or the possession or control by the Lender of, or over, any Collateral,
the Lender shall be granted a senior secured priming lien on the Archive, and any insurance or
sale proceeds received thereon.  The obligations owing to the Lender shall be secured by a
perfected security interest pursuant to sections 364(c)(2), 364(c)(3) and  364(d) of the
Bankruptcy Code with a valid, binding, continuing, enforceable, fully-perfected, first priority
priming lien on the Archive that is senior to any and all security interests in and liens on the
Archive (which is expressly senior in priority to, without limitation, all security interests and
liens of the other creditors) and any proceeds thereof (the "**Financing Lien**").  The Financing
Lien shall be senior in priority to any lien, right of setoff or recoupment or any similar right
(whether arising by common law, statute or contract) of any party, regardless of whether such
party is in possession of the Archive or otherwise.   Notwithstanding anything herein, the
Financing Lien shall be subject to the Carve Out (as defined below), but, for the avoidance of
doubt, payment of the Carve Out shall not reduce the amounts payable to the Lender hereunder.

    3.    **Superpriority Claims**.

    a)    Effective May 23, 2019, pursuant to section 364(c)(1) of the Bankruptcy Code, all

of the Funding Obligations approved under this Interim Order shall
constitute allowed senior administrative expense claims against the
Debtor (the "**Superpriority Claims**") with priority over any and all
administrative expenses, adequate protection claims, diminution
claims and all other claims against the Debtor, now existing or
hereafter arising, of any kind whatsoever, including, without
limitation, all administrative expenses of the kind specified in sections

9

503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, or 726 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and postpetition property of the Debtor and all proceeds thereof, subject only to the payment of the Carve Out (as defined below) to the extent specifically provided for herein.

b)    The Lender shall (i) have the right to credit bid up to the entire amount of the obligations under the Loan Documents including amounts advanced under this Interim Order and the Final Order and/or bid in excess of such amounts, in any sale of the Archive, (ii) participate as a qualified bidder, and (iii) have standing with respect to any such sale or hearing related thereto.

c)    In addition to the fees, costs, charges and expenses authorized under the Motion, the Superpriority Claims and Financing Lien shall expressly include all of the Lender's reasonable attorneys' and other professionals' fees arising from or related to (i) the Loan Documents; (ii) the Financing; (iii) all proceedings related to the Archive; (iv) all proceedings in connection with the interpretation,

10

amendment, modification, enforcement, enforceability, validity or carrying out of this Interim Order, or the Final Order at any time; and (v) costs related to this Chapter 7 Case and all reasonable expenses, costs and charges arising in connection therewith or related thereto.

4.    **Adequate Protection**. As adequate protection for the Financing, no liens shall be granted on the Archive other than those liens granted to Lender hereunder. Additionally, in accordance with this Interim Order and applicable laws, the Lender shall be granted relief from the automatic stay if the Archive Sale does not close by July 26, 2019 (the Maturity Date, as defined below), to enable the Lender to foreclose and take possession of the Archive in accordance with the Loan Documents and applicable law.

5.    **Carve Outs**. The Carve Out for certain expenses and professional fees incurred during the pendency of the Chapter 7 Case prior to the sale of the Archive (collectively, the "**Carve Out**" and such sale the "**Archive Sale**") shall mean (i) legal fees incurred by the Trustee's attorneys Fox Swibel Levin & Carroll LLP not to exceed $150,000 for services related to the Chapter 7 Case, including the Archive Sale, provided through the earlier of (a) July 26, 2019 or (b) the granting of stay relief to the Lender permitting it to foreclose on the Archive or (c) the closing date of the sale of the Archive, to be paid by Lender at closing of the Archive Sale or prior to the grant of such stay relief to Lender; plus (ii) the Trustee's statutory commission fee under Section 326 of the Bankruptcy Code, not to exceed $100,000 on the portion of Archive Sale proceeds that equal $13,000,000, to be paid at closing or prior to the grant of stay relief (the "**Trustee Fee Carve Out**"); provided that, to the extent Archive Sale proceeds exceed $13 million, the Trustee shall be entitled to the full statutory fee allowable under Section 326 of the

Bankruptcy Code (less the Trustee Fee Carve Out) to be paid from available funds of the Estate. Carve Out amounts shall not be paid by Lender to the extent there are sufficient sale proceeds available in excess of the full loan amount to do so; provided further however, that, notwithstanding any other provision hereof to the contrary or any claim or lien of Lender, if there are insufficient funds from the Archive Sale to pay the Carve Out amounts, such Carve Out amounts shall nonetheless be paid by the Lender upon closing of any Archive Sale or upon termination of the automatic stay effecting any transfer of possession or control of the Archive to Lender. Lender shall be deemed to have irrevocably consented to payment of all of the Carve Out amounts from its collateral pursuant to Section 506(c) of the Bankruptcy Code, and to have irrevocably waived any and all objections to use of its collateral to make any such payments.

      6.    **Funded Expenses – Interim Order**. The following Budget expenses shall be funded by the Lender as Advances upon entry of this Interim Order:

      (i) the cost of insuring the Archive with Seneca, or with such other insurer and on such terms as Lender and Trustee may mutually agree, up to $50,334 or such other amount of the premium thereof as agreed by Lender and the Trustee;

      (ii) the arrearage on the storage costs related to the portion of the Archive already located at the ICON storage unit, and accrued storage costs through the date of the Final Order, up to $3000;

      (iii) the cost of moving any or all of the Archive to the Debtor's storage unit at ICON from its current location at 200 S. Michigan in Chicago, at the standard market rates of a transportation company or service reasonably acceptable to Lender and the Trustee, up to $30,000 (which includes a $13,000 deposit to be funded and paid immediately upon entry of the Interim Order);

(iv) the cost of storing at ICON the portion of the Archive moved to ICON from the 200 S. Michigan location, through the date of the Final Order, up to $4,000; and

(v) compensation for the Debtor's employees Vicki Wilson, for one initial month, in the amount of $4167 and John Roach, for an initial month, in the amount of $5150, to facilitate the sale process.

The Lender shall pay the foregoing expenses upon receipt of an invoice therefor, or where there is no such invoice, upon receipt of a reasonably documented request from the Trustee.

7.    **Funded Expenses – Final Order.**   The following Budgeted expenses shall be funded by Lender upon entry of the Final Order approving the Financing at the hearing provided in paragraph 21 herein:

(i) the costs of storing the Archive at ICON from the date of the Final Order through the Maturity Date (defined below), at ICON's usual and customary storage rates, up to $9,000 (which includes $700/month for the Archive portion already there and $3737/month for the portion to be moved there);

(ii) Trustee expenses for marketing and advertising for, and sale of, the Archive not to exceed $45,000; and

(iii) an additional month of compensation for the Debtor's employee Vicki Wilson, in the amount of $4167,  in connection with her ongoing assistance to the Trustee in marketing and selling the Archive.

The Lender shall pay the foregoing expenses upon receipt of an invoice therefor, or where there is no such invoice, upon receipt of a reasonably documented request from the Trustee.

8.    **Protection of Lender's Rights**.

      a)     None of the Archive shall be subject to any liens, claims and encumbrances, except for those liens, claims and encumbrances expressly permitted under this Interim Order;

      b)     Except as otherwise provided in this Interim Order, so long as there exist Funding Obligations which have not been indefeasibly paid, no party other than Lender may take any action to exercise remedies against any of the Archive without further order of the Court;

      c)     In the event that an auction to sell the Archive does not occur by July 1, 2019 or by such later date as determined by the Trustee or the Court up until but not including July 26, 2019, or a sale of the Archive does not close by July 26, 2019 (the "**Maturity Date**"), the Lender shall be entitled to immediate relief from stay to foreclose on the Archive and take such other action under the Loan Documents and applicable law with respect to the Archive. The Debtor's estate shall retain its right to surplus from any foreclosure sale proceeds related to the Archive; and

      d)     Subject to the payment provisions described below, in no event shall the Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the

Archive or otherwise. The delay or failure to exercise rights and remedies under this Interim Order by the Lender shall not constitute a waiver of the Lender's rights hereunder, or otherwise. The Debtor and Trustee waive and shall not be entitled to any right of setoff against the Lender relating to the Funding Obligations.

9. **Waiver of Surcharge**. Except for the payment of the Carve Out amounts required to be paid by Lender herein or as otherwise expressly set forth herein or authorized in the Budget, nothing in this Interim Order shall constitute the consent by Lender to the imposition of any other costs or expenses of administration or other charge, lien, assessment or claim against Lender, its claims, the Archive or the proceeds thereof. The Trustee on behalf of herself, the Debtor and the Debtor's estate hereby waive any right to surcharge the Lender, its claims, the Archive or the proceeds thereof, or to assert or make a claim for any costs, expenses of administration or other charge, lien or assessment against Lender, its claims, the Archive or the proceeds thereof under 11 U.S.C. §§ 105, 506(c), 552 or otherwise, except for payment of the Carve Out amounts or other amounts expressly authorized in the Budget or as credit by the Lender to the Estate hereunder.

10. **Stipulations**. Subject to the Challenge Period set forth hereinbelow, the Trustee, for herself and on behalf of the Debtor, admits, stipulates, acknowledges, and agrees: (i) to the validity of the Funding Obligations under the Loan Documents; (ii) to the validity and priority of the Lender's liens on the Archive; (iii) no offsets, challenges, defenses, claims, or counterclaims of any kind or any nature to any of the obligations under the Loan Documents exist, and no portion of such obligations is subject to avoidance, recharacterization,

15

disallowance, or subordination pursuant to the Bankruptcy Code or other applicable law; (iv) the Debtor and the Trustee have no offsets, defenses, claims, objections, challenges, causes of action; and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against the Lender and/or any of Lender's respective affiliates, parents, subsidiaries, controlling persons, agents, attorneys, advisors, professionals, officers, directors, or employees whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to Sections 105, 510, or 542 through 553 of the Bankruptcy Code) or arising under the Loan Documents, or the security interests and liens in the Loan Documents; (v) no obligation, payment, right, transfer or grant of security or lien under this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim; (vi) as of the Petition Date, the Funding Obligations constitute allowed, secured claims in an amount not less than $13,500,000 within the meaning of sections 506(a) and 502 of the Bankruptcy Code, together with accrued and unpaid interest, fees, including, attorneys' fees and related expenses, costs, expenses, and other charges of whatever nature owing in respect thereof; (vii) the Debtor and Trustee waive, discharge, and release any right to challenge any of the obligations under the Loan Documents, the priority of the Debtor's obligations thereunder, and the security for (and the priority of the liens securing) such obligations, and to assert any offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action against the Lender, and/or any of its respective officers, directors,

16

or employees; and (viii) that all of the Debtor's debts and obligations under the Loan Documents (including, without limitation, any premiums payable thereunder) are immediately due and payable; provided however that nothing herein shall be construed to release Lender from its obligations hereunder, including without limitation its funding obligations under paragraphs 5, 6 and 7 hereof.

    11.    **Challenge Period**.

        a)    Subject to Section 11(c) hereunder, the stipulations and waivers contained in this Interim Order shall be without prejudice to the rights of the Trustee and the Debtor's estate or any creditors to seek to disallow the Lender's claims, pursue any claims or seek appropriate remedies against Lender, so long as such claims are asserted by July 26, 2019 (the "**Challenge Period**" and such challenges a "**Challenge**").

        b)    Upon the expiration of the Challenge Period, to the extent not specifically included in a timely and properly filed pleading asserting a Challenge, any other possible Challenge, whether such Challenge is separately filed or otherwise asserted through an amendment of any timely and properly filed pleading asserting a Challenge, shall be deemed to be forever waived and barred.

        c)    All of the Trustee's and Debtor's and the Estate's agreements, acknowledgments, stipulations, waivers, releases, and affirmations as to the priority, extent, and validity of the Lender's claims, liens, and interests, of any nature, or otherwise incorporated or set forth in this Interim Order, shall be of full force and effect and

17

forever binding upon the Debtor and Trustee, the Debtor's bankruptcy

estates, and all creditors, interest holders, and other parties-in-interest

in this Chapter 7 Case without further action by any party or this

Court, and any other party in interest, and any and all successors-in-

interest as to any of the foregoing, shall thereafter be forever barred

from bringing any Challenge with respect thereto and may not be part

of any challenge asserted by the Trustee.

12.    **Financial Reporting**.  The Trustee shall timely provide the Lender with

reasonable financial and other reporting, including real time information concerning the sale of

the Archive and invoices, which must be provided before the payment of any Advances

hereunder.

13.    **Preservation of Rights Granted Under the Order**.

a)    No claim or lien having a priority superior to or *pari passu*

with those granted by this Interim Order to the Lender shall be granted

or allowed while any portion of the Financing or the commitments

thereunder (including repayment of the Carve Out) or the Funding

Obligations remain outstanding;

b)    To the extent of applicable law, if any or all of the

provisions of this Interim Order are hereafter reversed, modified,

vacated or stayed, such reversal, stay, modification or vacation shall

not affect (i) the validity, priority or enforceability of any Funding

Obligations incurred prior to the actual receipt of written notice by the

Lender of the effective date of such reversal, stay, modification or

vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the Loan Documents with respect to any Funding Obligations. Notwithstanding any such reversal, stay, modification or vacation, Funding Obligations incurred by the Debtor prior to the actual receipt of written notice by the Lender of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Interim Order, and the Lender shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order with respect to all uses of Funding Obligations; and

      c)     The terms and provisions of this Interim Order and the Loan Documents shall continue in this Chapter 7 Case, or in any successor case under the Bankruptcy Code. The Financing Lien, the Superpriority Claims, and all other rights and remedies of the Lender granted by the provisions of this Interim Order shall continue in full force and effect until the Funding Obligations are indefeasibly paid in cash in full and any claims for diminution have been satisfied.

14.    **Limitation on Use of Financing Proceeds**. Notwithstanding anything herein or in any other order by this Court to the contrary, no portion of the proceeds of the Financing or part of the Carve Out may be used for any of the following (each, a "**Lender Claim**") without the prior written consent of the Lender: (a) to object, contest or raise any defense to the validity, perfection, priority, extent or enforceability of any amount due under the

Loan Documents or this Order, (b) to assert any claim or cause of action against the Lender or its respective agents, affiliates, representatives, attorneys or advisors with respect to the Financing, (c) to assert or prosecute any action for preferences, fraudulent conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses against the Lender or its respective affiliates, representatives, attorneys or advisors in connection with matters related to the Financing to the extent approved under this Interim Order, or (d) to seek to modify any of the rights granted to the Lender hereunder. This provision shall be binding on any subsequently appointed or elected trustee or examiner, if any.

15.   **Enforcement Remedies**.  Upon the occurrence of the Maturity Date, the Funding Obligations shall become immediately due and owing.  In the absence of full payment in cash of all of the Funding Obligations when due, as provided for in this paragraph, the automatic stay is hereby deemed vacated as provided in this Interim Order, and the Lender shall thereafter be permitted to exercise such rights and remedies under such agreements, documents, and applicable law as to all or such part of the Collateral as the Lender shall, in its sole discretion, elect, including, but not limited to, the Lender's right to foreclose upon, and take possession of, the Archive.  Assuming the automatic stay is vacated pursuant to this paragraph, upon such enforcement by the Lender, the Trustee shall cooperate with the Lender in the disposition of the Collateral and shall not otherwise interfere or actively encourage others to interfere with the Lender's enforcement of its rights.

16.   **Binding Effect; Successor and Assigns**.  The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in this Chapter 7 Case who have been given notice, including, without limitation, the Lender, the Trustee, and the Debtor and of the respective successors and assigns of the foregoing and shall inure to the benefit of the Lender and its

20

respective successors and assigns. In determining to make any loan, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, the Lender shall not (i) be deemed to be in control of the operations of the Debtor, (ii) owe any fiduciary duty to the Debtor, its creditors, shareholders or estate or (iii) be deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq.*, as amended, or any similar federal or state statute).

17.    **Effectiveness**. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

18.    **Headings**. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

19.    **Releases**. Subject to entry of this Interim Order, the Debtor and Trustee hereby waive any and all actions related to (a) postpetition claims arising from the Petition Date through the entry of this Interim Order; and (b) prepetition claims (other than claims related to the validity or perfection of Lender's claims), except as to the Trustee's right to bring a cause of action by July 26, 2019.

20.    **Archive Sale**.  In accordance with this Interim Order, the Lender shall be paid in Cash at Closing from the proceeds of the Archive Sale, after payment of the Carve Out amounts.

21.    **Final Hearing**.  The Final Hearing will be held before the Court on May 28, 2019 at 11:00 a.m. in Courtroom 682  The Trustee shall, forthwith, mail copies of a notice of entry of this Interim Order and the date of the Final Hearing, together with a copy of this Interim Order to all parties entitled to notice.  The notice of entry of this Interim Order shall state that any party in interest objecting to the Motion may file written objections with the Clerk of the United States Bankruptcy Court for the Northern District of Illinois, by no later than 5:00 p.m.

on May 2_7_*th*_, 2019 and shall contemporaneously serve such objection on counsel to the Trustee

and Lender, *and that oral objections may be heard;*

Acknowledged and Agreed:

Dated: _____
          Chicago, Illinois

_____
MIRIAM R. STEIN, NOT INDIVIDUALLY
BUT AS CHAPTER 7 TRUSTEE
TO THE ESTATE OF
JOHNSON PUBLISHING COMPANY

By: N. Neville Reid, her counsel
Fox Swibel Levin & Carroll LLP
200 West Madison – 30th Floor
Chicago, IL  60606

_____
CAPITAL HOLDINGS V, LLC

By:  Jeffrey Schwartz, its Counsel
Much Shelist
191 North Wacker – Suite 1800
Chicago, IL  60606

Enter:

_____
HONORABLE JACK B. SCHMETTER
UNITED STATES BANKRUPTCY JUDGE

May 16, 2019

## EXHIBIT A

**Budget for Line of Credit Agreement Between Miriam Stein,  as Trustee, and Capital Holdings**

*Interim Order Funding (Up to the indicated amounts):*

Insurance Expense for Archive:  $50,334

Monthly salary for Vicki Wilson for initial month:  $4167

Monthly salary for John Roach for one month:  $5,150

ICON Moving Expenses:        Up to $30,000

ICON Storage Costs through date of Final Order:      Up to $7000


*Final Order Funding (Up to the indicated amounts):*

ICON storage from Final Order date through July 26, 2019:   Up to $9000

Monthly salary for Vicki Wilson for an additional month:  $4167

Trustee and Professional Fees:   $295,000, consisting of:

| | |
|---|---|
| Trustee Legal Fees (FSLC): | $150,000 |
| Trustee Fee: | $100,000 |
| Trustee expenses related to marketing and advertising for auction, and sale of Archive: | $45,000 |