# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 19-10236 |
| Johnson Publishing Company, LLC, | ) | |
| | ) | Hon. Jack B. Schmetterer |
| Debtor. | ) | |
| | ) | **Date: June 18, 2019** |
| | ) | **Time: 10:30 a.m.** |

**ORDER: (A) AUTHORIZING SALE OF THE DEBTOR'S ARCHIVE COLLECTION AND CERTAIN RELATED ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) APPROVING SCHEDULE AND PROCEDURES WITH RESPECT TO THE PROPOSED SALE, FINAL SALE HEARING AND THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH; (C) AUTHORIZING CERTAIN BID PROTECTIONS FOR A POTENTIAL STALKING HORSE BIDDER; AND (D) APPROVING RELATED FORMS AND MANNER OF NOTICE**

Upon consideration of the Motion of Miriam R. Stein, not individually, but solely in her capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Johnson Publishing Company, LLC (the "Debtor"), for the entry of an Order: (A) Authorizing Sale of the Debtor's Archive Collection and Certain Related Assets Outside the Ordinary Course of Business; (B) Approving Schedule and Procedures With Respect to the Proposed Sale, Final Sale Hearing and the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith; (C) Authorizing Certain Bid Protections for a Potential Stalking Horse Bidder; and (D) Approving Related Forms and Manner of Notice (the "Motion"); the Debtor having accumulated over its history an iconic archive collection of images and audio and video media documenting African-American History for the last seventy years, including without limitation the items listed in the Debtor's filed Schedules as Dkt. Nos. 37-4 (Rider to Schedule A/B-42.1; all 174 pages), 37-6 (Rider to Schedule A/B-42.3; page 3 of 4) and 37-7 (Rider to

Schedule A/B – 42.5; page 3 of 3), together with certain equipment and other tangible property used in connection with such archive collection (collectively, the "Archive Assets" or the "Assets"); the Trustee desiring to hold an auction to sell all of the Trustee's, the Debtor's and the Estate's right, title and interest in the Archive Assets to the entity presenting the highest or otherwise best bid therefor (the "Auction" and such highest bidder the "Prevailing Purchaser"), pursuant to bid procedures appended hereto as **Exhibit A** (the "Bid Procedures"), free and clear of all liens, claims, interests and encumbrances (the "Sale"); the Trustee further desiring to schedule a hearing to approve the sale of the Assets to any Prevailing Purchaser (the "Sale Hearing"), and to obtain Court approval for the Trustee's proposed notices of the Auction and the Sale Hearing and of the cure costs associated with any proposed assumption and assignment of executory contracts or unexpired leases (the "Section 365 Agreements") to such Prevailing Purchaser; the Court having considered the Motion and determined that the relief requested therein is in the best interests of the Debtor, the Estate, its creditors and parties in interest, and further having overruled any and all objections thereto; sufficient notice having been given of the Motion and adequate cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Bid Procedures are hereby approved in their entirety, and incorporated herein by reference as if expressly stated herein. The Trustee and her advisors are authorized to take all of the actions described in the Bid Procedures in furtherance of the Auction and the Sale.

3.      The Trustee and her advisors, in order to stimulate bidding for the Assets and maximize their value for the benefit of the Estate and its creditors, are hereby authorized to offer to a potential stalking horse bidder (the "Stalking Horse Bidder") bid protections in the form of a

break-up fee of up to 2.5% (the "Break-Up Fee") of the cash purchase price of the proposed

stalking horse bid, and an expense reimbursement of up to $100,000 for the fees and expenses

incurred by any such Stalking Horse Bidder in documenting and pursuing its bid for the Assets

(the "Expense Reimbursement"), without seeking further Court approval.  If the Stalking Horse

Bidder qualifies to bid at the Auction and actually bids at the Auction but does not become the

Prevailing Purchaser, then any such Break-Up Fee and Expense Reimbursement shall be payable

to such Stalking Horse Bidder (i) by the Trustee, from the proceeds of the Sale received by the

Estate from an actual closing of the Sale with the Prevailing Purchaser, as an administrative

expense, or (ii) by Capital Holdings V, LLC, the Debtor's secured creditor with a lien on the

Archive Assets ("Capital Holdings"), from its own funds, if Capital Holdings is the Prevailing

Purchaser but is not the Stalking Horse Bidder.  For the avoidance of doubt, no Break-Up Fee or

Expense Reimbursement shall be payable to any Stalking Horse Bidder unless the Sale actually

closes with the Prevailing Purchaser and the Estate receives the proceeds of Sale (including the

benefit of a credit bid by Capital Holdings, as applicable) in accordance with the Trustee's asset

purchase agreement with such Prevailing Purchaser.

     4.     The Trustee is authorized to hold the Auction for the sale of the Assets, pursuant

to the Bid Procedures.  The Trustee shall file with the Court a report on the results of the

Auction, and a proposed order approving the Sale in a form acceptable to the Trustee and any

Prevailing Purchaser, within one (1) business day after the Auction is concluded.

     5.     All of the deadlines in the Bid Procedures, and any and all procedures for

adjustments thereof or related thereto, are hereby approved and authorized as if expressly stated

herein.

6.      This Court shall hold the Sale Hearing on **July 23, 2019** at _11:00_ CDT, to

approve the proposed Sale.  At the Sale Hearing, the Court will enter a separate order (the "Sale

Order"), in form and substance satisfactory to the Court,  approving the transfer of all of the

Debtor's, the Estate's and the Trustee's right, title and interest in and to the Assets,   to the

Prevailing Purchaser, free and clear of all liens, claims, interests (including any alleged

ownership interests in the Assets disallowed or deemed disallowed by this Court's order

establishing a special bar date for alleged ownership claims related to the Archive Assets [Dkt.

67]) and encumbrances.  Upon an adequate showing or proffer, the Sale Order shall find that the

Prevailing Purchaser is a "good faith purchaser" for purposes of Section 363(m) of the

Bankruptcy Code.

7.      Any and all objections to the Sale or any proposed Sale Order shall (i) be filed on

or before **5:00 PM CDT, July 22, 2019** and served on (a) the Trustee and her counhsel  (b)

counsel for Capital Holdings, (c) the Debtor and (d) the U.S. Trustee, (ii) state with specificity

the reasons for such objection and the factual basis therefor and (iii) be heard at the Sale Hearing.

8.      The proposed form of notice of the Auction and the Sale Hearing, in substantially

the form appended hereto as **Exhibit B** (the "Auction and Sale Hearing Notice"), is hereby

approved.

9.      The Trustee shall file a copy of the cure costs necessary to assume or assign the

Section 365 Agreements on or before **June 28, 2019** (the "Cure Costs").  The proposed form of

notice to counterparties of the Section 365 Agreements (the "Counterparties") appended hereto

as **Exhibit C**, informing them of their right to object to the Trustee's calculation of such Cure

Costs, is hereby approved (the "Cure Notice"). The Trustee shall promptly serve the Cure Notice

(in substantial conformity with Exhibit C hereto) on the Counterparties after filing the Cure

4

Costs, and any and all objections to Cure Costs shall be filed with the Court and served on the Trustee and her counsel by no later than **July 8, 2019.** The Court shall hold a hearing on **July 11, 2019 at** 10:30 to resolve any and all objections to any of the Cure Costs.

10.    The Trustee shall serve a copy of this Order and the exhibits appended hereto (including the Bid Procedures) by mail to (i) all creditors of the Debtor and all Counterparties, (ii) all parties who have expressed any interest in acquiring the Assets to the best of the knowledge of Hilco Streambank (as the Trustee's advisor herein) and the Trustee, (iii) Capital Holdings and any and all other persons known by the Trustee to assert any lien, claim or interest in the Assets, (iv) all government taxing authorities identified by the Debtor as having jurisdiction over its affairs, including the Internal Revenue Service, and (v) to the extent not duplicative, all persons or entities to whom the Trustee was required to mail notice of the special bar date for any alleged ownership claims [Dkt. No. 67], by no later than two (2) business days after entry of this Order.

11.    This Order shall be effective immediately upon its entry.

Date: _____

JUN 2 0 2019

Hon. Jack B. Schmetterer

5

## EXHIBIT A

## IN RE JOHNSON PUBLISHING COMPANY (Case No. 19-10236)
## BID PROCEDURES FOR AUCTION OF ARCHIVE AND ARCHIVE RELATED
## ASSETS ONLY

### July 17, 2019

These "Bid Procedures" set forth the process by which Miriam Stein, not in her individual capacity but solely as the Court-appointed chapter 7 trustee (the "Trustee" or "Seller") for the bankruptcy estate of Johnson Publishing Company, LLC (the "Debtor" and such bankruptcy estate the "Estate"), is authorized to conduct a sale by auction (the "Auction") of certain archive assets of the Debtor described more specifically below. The Debtor's bankruptcy case is pending in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Court"), under Case No. 19-10236 before the Honorable Jack B. Schmetterer.

These Bid Procedures were approved by order of the Court on [⬛⬛⬛⬛], 2019 (Dkt. ___; the "Bid Procedures Order"), pursuant to the Trustee's Motion for Order: (A) Authorizing Sale of the Debtor's Archive Collection and Certain Related Assets Outside the Ordinary Course of Business; (B) Approving Schedule and Procedures With Respect to the Proposed Sale, Final Sale Hearing and the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith; (C) Authorizing Certain Bid Protections for a Potential Stalking Horse Bidder; and (D) Approving Related Forms and Manner of Notice (Dkt. ___; the "Motion").

Pursuant to the Motion, the Trustee requested entry of an order, among other things: (a) approving bid procedures ("Bid Procedures") to govern the sale (the "Sale") of certain assets of the Debtor and Trustee, as described herein (the "Assets"), to the Prevailing Purchaser (as defined herein), free and clear of all liens, claims, encumbrances and interests; (b) approving the form and manner of notice of the proposed Sale; (c) scheduling the Auction to sell the Assets; (d) scheduling a hearing to approve a sale of the Assets to the Prevailing Purchaser (as defined herein) (the "Sale Hearing"); (e) authorizing a break-up fee and expense reimbursement amount for a potential stalking horse bidder; and (f) authorizing procedures governing the determination of cure costs associated with the assumption and assignment of certain executory contracts and unexpired leases (the "Section 365 Agreements") to the Prevailing Purchaser.

Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Motion or the Bid Procedures Order, as applicable.

1.    Assets to Be Sold

The Trustee provides these Bid Procedures, whereby prospective bidders may qualify for and participate in the Auction, thereby competing to make the highest or otherwise best offer for the Assets.

The "*Assets*" consist of all of the Trustee's, the Estate's and Debtor's right, title and interest in and to the Debtor's iconic archive collection of images and audio and video media documenting African-American History for the last seventy years, including without limitation the items listed in the Debtor's filed Schedules as Dkt. Nos. 37-4 (Rider to Schedule A/B-42.1; all 174 pages), 37-6 (Rider to Schedule A/B-42.3; page 3 of 4) and 37-7 (Rider to Schedule A/B – 42.5; page 3 of  3), together with certain equipment and other tangible property used in connection with the archive (collectively, the "Archive Assets"). For the avoidance of doubt, and for all purposes including these Bid Procedures, the Assets shall exclude the Debtor's other assets, including its Fashion Fair Cosmetics line and artwork collection.

Qualified Bids (as defined below) for the Assets shall not be conditioned upon the acquisition of any other assets of the Debtor or Seller at any other time.

2.     Stalking Horse Bidder for the Assets

Seller has the authority to designate (in consultation with Capital Holdings) a Qualified Bidder as a stalking horse bidder at any time prior to the Auction (a "Stalking Horse Bidder"), pursuant to which the Stalking Horse Bidder shall agree to purchase the Assets on terms acceptable to the Seller (the "Stalking Horse Bid"). Any notice of the Seller designating a Stalking Horse Bid shall be accompanied by an asset purchase agreement executed by the Stalking Horse Bidder describing, among other things, the bid protections sought by such Stalking Horse Bidder. A Stalking Horse Bid may, at the Seller's discretion, qualify for a break-up fee of up to 2.5% payable in the event that the Stalking Horse Bidder is not the winning bidder and the winning bidder closes on the Sale (the "Break-Up Fee"), and an expense reimbursement of up to $100,000 for reimbursement of legal fees and expenses incurred by the Stalking Horse Bidder in conducting due diligence on and documenting ts bid up through the Auction (the "Expense Reimbursement").

Any Break-Up Fee shall be calculated as up to 2.5% of the Stalking Horse Bid (in its initial amount, not as it may be improved at any Auction),  and both the Break-Up Fee and Expense Reimbursement shall be payable (i) by Capital Holdings V, LLC, as a secured creditor of the Debtor with a lien on the Assets ("Capital Holdings"), in cash from its own funds, solely in the event that Capital Holdings is not the Stalking Horse Bidder and makes the highest or otherwise best offer for the Assets that is accepted by the Trustee at any Auction and such sale is approved by the Court and closes,  or (ii) by the Estate from the proceeds of a closing of the sale of the Assets, as an administrative expense, solely in the event that the winning bid is (a) from an entity other than Capital Holdings or the Stalking Horse Bidder,  and (b) accepted by the Seller as the highest or otherwise best bid for the Assets and actually closes after being approved by the Court.

The Trustee reserves the right to at any time (i) designate a form asset purchase agreement, as prepared by the Trustee or by a Qualified Bidder,  for the sale of the Assets pursuant to these Bid Procedures (the "Form Asset Purchase Agreement" or "Form APA"), and (ii) if the Trustee deems it necessary, seek court approval of the Form APA before the Bid Deadline.

3.    Confidentiality Agreements/Due Diligence Period

Subject to and upon execution of a non-disclosure and confidentiality agreement, in form and substance satisfactory to the Trustee, any party (a "Qualified Party") that wishes to conduct due diligence on the Assets may be granted access to information related to the Assets, which will be provided to all bidders upon their request subject to these Bid Procedures. For a party to be considered a Qualified Party, such party must demonstrate to the Trustee that the party has the ability to close on the purchase of the Assets in a timely manner in accordance with the terms of these Bid Procedures. The Trustee may, in the exercise of her business judgment, require that such parties demonstrate the legitimacy and viability of their interest by, among other things, requiring them to: (a) submit a binding letter of intent signed by an authorized representative of such party; (b) provide proof of access to funds and/or committed capital sufficient to finance the proposed transaction; and (c) given the historic and sensitive nature of the Assets, provide proof of the party's intended use of the Assets should the party succeed in acquiring them. The information to be provided to such qualified parties will be information that the Trustee reasonably believes is appropriate. All due diligence by any bidder (including Capital Holdings) shall be completed by the Bid Deadline (hereinafter defined). To the extent Capital Holdings elects to bid at the Auction in excess of the indebtedness owed to it by the Debtor, it shall upon request by Seller provide Seller the information required by the foregoing paragraphs 3(a), 3(b) and 3(c) of these Bid Procedures.

4.    Due Diligence from Bidders

Each party expressing an interest in the Assets shall comply with all reasonable requests for additional information and due diligence access by the Trustee regarding such party and its contemplated transaction. Failure by a party to comply with such reasonable requests for additional information and due diligence access may be a basis for the Trustee to determine that such bidder is not a Qualified Bidder (as defined herein). By submitting a bid, each bidder (including Capital Holdings) shall be deemed to acknowledge and represent that it has had an opportunity to conduct due diligence on the Debtor and the Assets prior to making its bid; that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its bid; and that it did not rely upon any written or oral statement, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Trustee or the Debtor, or the completeness of any information provided in connection therewith, except as otherwise expressly agreed by the Trustee in any asset purchase agreement between the Trustee and a Qualified Bidder. To the extent Capital Holdings elects to bid at the Auction, Capital Holdings shall be deemed to have made the acknowledgments and representations in this paragraph 4 of these Bid Procedures.

**All bidders interested in conducting due diligence shall contact Richelle Kalnit or Ben Kaplan of Hilco Streambank, liquidation consultant and auctioneer for the Trustee, at rkalnit@hilcoglobal.com and bkaplan@hilcoglobal.com (respectively) or 212-610-5601.**

5.    Determination of "Qualified Bidder" Status; Bid Deadlines

In order to participate in the bidding process and be deemed a "*Qualified Bidder*," each potential bidder ***must*** deliver a Qualified Bid (as defined below), to be <u>received</u> no later than **Monday, July 15, 2019 at 5:00 p.m. Central Daylight Time** (the "<u>Bid Deadline</u>") on the following (the "<u>Notice Parties</u>"):   (a) Counsel for the Trustee:   N. Neville Reid, Esq. (nreid@foxswibel.com)   and Richard S. Meller, Esq. (rmeller@foxswibel.com), Fox Swibel Levin & Carroll LLP, 200 West Madison Street, Suite 3000, Chicago, Illinois 60606; (b) the Trustee,  at Chuhak & Tecson P.C., 30 South Wacker Drive, Suite 2600, Chicago, IL 60606, Attn: Miriam R. Stein, Esq. (mstein@chuhak.com); (c) Liquidation Consultant and Auctioneer for the Trustee, Hilco Streambank ("<u>Hilco</u>"), Attn:  Gabriel Fried (gfried@hilcoglobal.com), Richelle Kalnit (rkalnit@hilcoglobal.com) and Ben Kaplan (bkaplan@hilcoglobal.com), 1500 Broadway 8th Floor, New York, NY  10036;  and  (d)  Brian Greer, Esq., Counsel to Capital Holdings V, LLC, Dechert LLP, 1095 Avenue of the Americas, New York, New York 10036-6797 (brian.greer@dechert.com).  Qualified Bids may be provided electronically, by U.S. Mail or by overnight courier provided the Qualified Bid is received by the Notice Parties on or before the Bid Deadline.   Capital Holdings shall be deemed a Qualified Bidder for purposes of the Auction and these Bid Procedures,  but it shall provide notice to the Notice Parties by the Auction Date of its intent to credit bid at the Auction.

A "***Qualified Bid***" is a written offer that:

(a)    includes an affirmative statement that the Qualified Bidder offers to purchase the Assets and irrevocably commits to closing on or before July 26, 2019 (the "<u>Closing Date</u>"), and contains no contingencies for conducting further due diligence or obtaining financing;

(b)    is based on the Form Asset Purchase Agreement, or (if no Form Asset Purchase Agreement has been designated) is otherwise in such form and substance satisfactory to the Trustee in her sole discretion and consistent with these Bid Procedures, and includes executed transaction documents (including a definitive purchase agreement and all schedules and exhibits thereto), signed by an authorized representative of such Qualified Bidder, pursuant to which the Qualified Bidder proposes to effectuate a transaction (the "<u>Bidder Agreement</u>"), and such Bidder Agreement shall also include a copy of the Bidder Agreement marked against any Form Asset Purchase Agreement to show all changes requested by the bidder (including those related to the consideration to be paid for the Assets and to remove all provisions that apply only to any Stalking Horse Bidder, including any and all provisions related to any Break-Up Fee or Expense Reimbursement);

(c)    includes a certified statement of the Qualified Bidder's intended use of the Assets being purchased, which statement must include, if applicable, such Qualified Bidder's intention to sell or transfer any Assets once purchased;

(d)    includes a summary term sheet with the material terms of the bid;

4

(e)     proposes a minimum cash purchase price for the Assets of no less than $12.5 million plus payment of the Cure Amounts, unless the Trustee has designated a Stalking Horse Bidder, in which event the Qualified Bidder shall propose (i) a cash purchase price that exceeds the sum of (x) the Stalking Horse Bid price plus (y) the combined Break Up Fee and Expense Reimbursement payable in the event the Stalking Horse Bidder is not the Prevailing Purchaser (as defined below), plus (z) $50,000; and (ii) payment of all Cure Amounts (as defined below);

(f)     demonstrates that such Qualified Bidder is financially capable of consummating the transaction contemplated by the Bidder Agreement;

(g)     is irrevocable and binding until and unless the Trustee accepts a higher or otherwise better Qualified Bid and the Qualified Bidder for the Assets is not selected as the Back-Up Bidder for the Assets (each as defined herein);

(h)     does not request any expense reimbursement, break-up fee, "topping," termination, contribution, or other similar fee or payment, unless the bidder is also the Stalking Horse Bidder;

(i)     contains such financial and other information that will reasonably allow the Trustee to make a determination as to the Qualified Bidder's financial wherewithal, intended use of the Assets and other capabilities to consummate the transactions contemplated by the Bidder Agreement and pay the purchase price in cash at the Closing, which information shall be satisfactory to the Trustee, including: (i) contact names and numbers for verification of financing sources, if any, and identity of direct or indirect owners of the bidder; (ii) evidence of such Qualified Bidder's internal resources and/or proof of unconditional debt funding commitments from a recognized financial institution in the amount of the proposed purchase price, or the posting of an irrevocable letter of credit from a recognized financial institution issued in favor of the Trustee in the amount of the proposed purchase price, in each case, as are needed to consummate the Bidder Agreement; (iii) such Qualified Bidder's current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Trustee; (iv) such financial and other information demonstrating the Qualified Bidder's ability to provide adequate assurance of future performance under section 365 of the Bankruptcy Code as to any contracts or leases it proposes be assigned to it, in a form requested by the Trustee to allow the Trustee to serve on counterparties to any contracts or leases being assigned or both assumed and assigned in connection with the proposed sale in a timely manner so as to not disrupt the sale process; and (v) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Trustee, demonstrating that such Qualified Bidder has the ability to consummate the Bidder Agreement;

(j)     contains such information requested by the Trustee, including any and all Section

5

365 Agreements that the Qualified Bidder wishes to have assigned or both assumed and   assigned to it pursuant to the Bidder Agreement, which information shall be satisfactory to the Trustee;

(k)    contains such information requested by the Trustee, regarding the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation, which information shall be satisfactory to the Trustee;

(l)    includes evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the Bidder Agreement, which evidence shall be satisfactory to the Trustee;

(m)    includes covenants, if any, reasonably acceptable to the Trustee, but under no circumstances shall a bid be conditioned on the obtaining or the sufficiency of financing or any internal or credit committee approval, syndication requirements, or on the outcome or review of due diligence; and

(n)    be accompanied by a good-faith cash deposit in an amount not less than ten percent (10%) of the amount of the Qualified Bid, which shall be deposited in an interest-bearing escrow account (to the extent permitted by law or procedures governing bankruptcy trustees in general) to be established by the Trustee subject to an escrow agreement satisfactory to the Trustee, and which shall be credited against the purchase price in the event the Qualified Bidder is the Prevailing Purchaser for the Assets.

By submitting a bid, a Qualified Bidder, other than any Stalking Horse Bidder, shall be deemed to have waived the right to assert or seek payment of any post-filing claim, including administrative expense claims, and to the extent otherwise applicable, a substantial contribution claim under section 503 of the Bankruptcy Code, with respect to its bid or the marketing or auction process; provided however that Capital Holdings shall retain its post-petition liens, priority claims, administrative expense claims and other rights granted to it as a lender under its loan documents with the Debtor and the Final Order (i) Authorizing the Chapter 7 Trustee to Obtain Postpetition Financing on a Senior Secured Superpriority Basis pursuant to 11 U.S.C. §§105, 361, 362, 363 and 364, and (ii) Granting Related Relief [Dkt. 57] (the "Financing Order"), irrespective of whether it is a bidder for the Assets.

A bid meeting the above requirements, as may be supplemented by agreement of the Trustee (in consultation with Capital Holdings) and the entity submitting the bid, in the Seller's judgment shall constitute a Qualified Bid.  The Trustee shall in consultation with Capital Holdings make a determination regarding whether a bid is a Qualified Bid and shall use her reasonable best efforts to notify bidders before the Auction Date whether their bids have been determined to be Qualified Bids.

Notwithstanding any other provision hereof to the contrary, whenever these Bid Procedures refer to or require consultation by the Trustee with Capital Holdings with respect to any matter, such consultation shall not be construed to require Capital Holdings' consent in order for the Trustee to take action with respect to such matter within her sole discretion, except that Capital Holdings' prior consent shall be required to modify any terms that would be inconsistent with the Financing Order or the Consent Order Resolving Motion of Capital Holdings V, LLC for Relief from the Automatic Stay [Dkt. 34].

**Any party providing a Qualified Bid on or before the Bid Deadline, and only such parties, shall be entitled to bid at the Auction; except that Capital Holdings may credit bid at the Auction for its collateral up to the indebtedness owed to it by the Debtor as of the Auction Date, so long as it (i) discloses such total indebtedness to the Notice Parties by the start of the Auction and (ii) executes and delivers to the Trustee an asset purchase agreement in form and substance satisfactory to the Trustee and Capital Holdings in their respective discretion, before or after the date of the Auction, which agreement shall include an obligation to pay any Break-Up Fee and Expense Reimbursement as may be due and payable by Capital Holdings to any Stalking Horse Bidder in accordance with paragraph 2 of these Bid Procedures if such Stalking Horse Bidder is not the Prevailing Purchaser (as defined below).**

**Notwithstanding any other provision hereof to the contrary, any credit bid by Capital Holdings at the Auction that is accepted by the Trustee as the highest or otherwise best bid for the Assets shall (i) legally bind Capital Holdings to purchase the Assets in accordance with these Bid Procedures and a Form APA (or pursuant to such other asset purchase agreement acceptable to the Trustee), to the same extent (other than price) as any other Prevailing Purchaser and (ii) close on or before the Closing Date.**

6.    Section 365 Agreements.

Any Qualified Bidder shall be required, as part of its Qualified Bid, to identify any executory contract(s) and/or unexpired lease(s) that the Qualified Bidder desires to have the Trustee assume and assign to the Qualified Bidder in the event the Qualified Bidder is the Prevailing Purchaser (the "Section 365 Agreements"). **The Prevailing Purchaser shall be solely responsible for payment of any and all cure costs (the "Cure Costs" or "Cure Amounts") necessary to be paid to the non-debtor party to any such Section 365 Agreement. The Cure Costs shall be paid by the Prevailing Purchaser in addition to the Prevailing Bid at Closing.**

On or before **June 28, 2019**, the Trustee shall file with the Court a list of executory contracts and unexpired leases and shall disclose the amount, if any, necessary to cure any defaults thereunder. Notice of the foregoing shall be provided by the Trustee contemporaneously to all non-debtor parties to such executory contracts and unexpired leases. In the event any non-debtor party objects to the estimated cure amount disclosed by the Trustee, such party or parties must file a written objection to the estimated cure amount with the Court no later than **July 8, 2019  at 5:00 p.m. CDT** (the "Cure Objection Deadline"). In the event the objection relates to a Section 365 Agreement, and in the absence of a consensual resolution, the Court shall conduct a

7

hearing on the objection not later than **July 11, 2019**. In the event the objection relates to any executory contract or unexpired lease that is not a Section 365 Agreement, the Court shall conduct a hearing on such objection by further notice of hearing.

To the extent a Prevailing Purchaser identifies any Section 365 Agreement that it wants assigned to it, the Trustee will (after conclusion of the Auction) file a motion to approve such assumption and assignment and have it heard on an expedited basis at the Sale Hearing. A Prevailing Purchaser may elect to have certain Section 365 Agreements assumed by the Trustee and assigned to the Prevailing Purchaser after the date of the closing of the sale of the Assets to such Prevailing Purchaser, so long as such deferred assumption and assignment of such Section 365 Agreements shall not negate, diminish or otherwise interfere with the Prevailing Purchaser's obligation to close the Sale of the Assets on or before July 26, 2019 in accordance with the terms of the Prevailing Bid.

7.    Modifications of Qualified Bids Prior to Auction

Between (i) the date that the Trustee notifies a bidder that it is a Qualified Bidder and (ii) the Auction, the Trustee may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the written consent of the Trustee, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period of time such Qualified Bid remains binding as specified herein; *provided* that any Qualified Bid may be improved at the Auction as set forth herein.

8.    Auction Baseline Bid/No Qualified Bids

Prior to the Auction, the Trustee shall provide each Qualified Bidder notice of the terms of the highest or otherwise best Qualified Bid or Qualified Bids received for the Assets (the "Baseline Bid"). If (i) only a Stalking Horse Bid is submitted by the Bid Deadline and there are no other Qualified Bids, and (ii) Capital Holdings notifies the Trustee of its intent to credit bid for the Assets, then the Trustee shall hold an Auction to select either the Stalking Horse Bidder or Capital Holdings as the Prevailing Purchaser. If no Qualified Bid nor any Stalking Horse Bid is submitted by the Bid Deadline, then the Trustee shall not hold an Auction, and will proceed to enter into an asset purchase agreement with Capital Holdings for its acquisition of the Assets by credit bid, to the extent Capital Holdings elects not to lift the stay in order to foreclose on the Assets.

9.    Auction

In the event that the Trustee (in consultation with Capital Holdings) determines there is more than one Qualified Bidder for the Assets (including the Stalking Horse Bidder), the Trustee is authorized to conduct an Auction for the Assets. Other than as expressly set forth herein, the Trustee may conduct an Auction in the manner she determines (in consultation with Capital Holdings), at her sole discretion, that will result in the highest or otherwise best offer for the Assets. The Auction shall be held on **Wednesday, July 17, 2019 at 10:00 A.M. CDT** (the "Auction Date"), at the law offices of Fox Swibel Levin & Carroll LLP, 200 West Madison,

Suite 3000, Chicago, Illinois 60606, or such other location as shall be timely communicated to all entities entitled to attend the Auction via electronic mail. The Trustee, the Notice Parties and Qualified Bidders and their respective advisors shall be permitted to attend the Auction. The Trustee, upon consultation with her advisors and Capital Holdings, may change the Auction Date within her discretion to the extent she deems such change to be in the best interests of the Estate, and in the event of any such change the Trustee shall notify any and all bidders and other persons or entities authorized to attend the Auction.

An "*Overbid*" is any bid or bids made at the Auction subsequent to the Trustee's announcement of the Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(a)   if there is a Stalking Horse Bid, the initial Overbid shall be in an amount no less than the sum of (i) the Stalking Horse Bid plus (ii) the Break- Up Fee plus (iii) the Expense Reimbursement, plus (iv) $50,000, and subsequent Overbids thereafter shall be in an amount no less than the amount determined and communicated by the Trustee and Hilco at the Auction;

(b)   if there is no Stalking Horse Bid, the initial Overbid and each subsequent Overbid thereafter shall be no less than the Overbid amount set by the Trustee and Hilco at the Auction;

(c)   each Overbid shall remain open, irrevocable and binding on the Qualified Bidder until and unless: (i) the Trustee accepts as an Overbid a higher Qualified Bid for the Assets; and (ii) such Overbid is not selected as the Back-Up Bid for the Assets (as defined below); and

(d)   to the extent not previously provided, a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, evidence demonstrating such Qualified Bidder's ability to timely close the transactions proposed by such Overbid.

In addition to complying with the above requirements, the Auction shall be governed by the following procedures:

(i)   the Auction will be conducted openly (all bids announced to Qualified Bidders, and those attending the Auction) by the Trustee or her designee, and only the Trustee and her representatives, the Debtor and its representatives, Capital Holdings and its representatives and Qualified Bidders (and their counsel and advisors) shall be entitled to: (x) make any subsequent bids at the Auction; (y) make statements on the record at the Auction; or (z) otherwise participate at the Auction in any manner whatsoever;

(ii)   each Qualified Bidder shall be required to represent that it has not engaged in any collusion with respect to the bidding or the sale of the Assets,

9

though Qualified Bidders are permitted to make joint bids as permitted by the Trustee;

(iii)   the Qualified Bidders shall appear in person at the Auction, through a duly authorized representative, or as otherwise agreed;

(iv)   bidding shall commence and proceed as determined by the Trustee or her designee in consultation with Capital Holdings;

(v)   the bidding at the Auction shall be transcribed or videotaped, at the Trustee's election;

(vi)   except as otherwise provided herein, all Qualified Bidders shall have the right to submit additional bids and make additional modifications to any Bidder Agreement, as applicable, at the Auction, provided that any such modifications to any Bidder Agreement, on an aggregate basis and viewed in whole, shall not be less favorable to the Trustee than such Qualified Bidder's previous bid in the Trustee's discretion (in consultation with Capital Holdings);

(vii)   the Auction shall continue (but in no event past July 26, 2019) until the Trustee determines that a Qualified Bid is the highest or otherwise best offer from among the Qualified Bids (the "Prevailing Bid" and the party or parties that submitted such Prevailing Bid, the "Prevailing Purchaser"), which shall be subject to Court approval. If Capital Holdings' credit bid is the highest or otherwise best offer for the Assets and is accepted by the Trustee, Capital Holdings will be deemed the "Prevailing Purchaser" for purposes of the Auction and the Sale;

(viii)   in selecting the Prevailing Bid, the Trustee (in consultation with Capital Holdings) may consider all factors, including the amount of the purchase price, the likelihood of each bidder's ability to timely close a transaction and the timing thereof, the form and substance of the Bidder Agreement requested by each bidder, the net benefit to the Trustee's estate, and the Prevailing Bidder's intended use for the Assets;

(ix)   in the event of any dispute over the selection of the Prevailing Bid or conduct of the Auction, the Court shall have exclusive jurisdiction to resolve any such disputes;

(x)   **No bids may be made for the Assets after the Auction, including at any Sale Hearing; and,**

(xi)   neither the Trustee nor the bankruptcy estate shall be liable for any broker's commissions (except for Hilco's commission on the terms approved by the Court as an administrative expense claim).

10

10.    Posting Auction Results; Sale Hearing; Closing

The Trustee shall post on the docket for this case the results of the Auction, and a proposed order for approval of the Sale to the Prevailing Purchaser, on or before **July 19, 2019**. The Prevailing Bid will be subject to approval by the Bankruptcy Court. The hearing to approve the sale of the Assets to the Prevailing Purchaser is scheduled to take place on **July 23, 2019** at [ ] CDT before the Bankruptcy Court, or at such times thereafter as counsel may be heard (the "Sale Hearing"). The Sale Hearing may be adjourned from time to time by the Trustee but without further notice to any other party in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or a notice filed with the Bankruptcy Court, as applicable.

The closing(s) of the sale of the Assets (the "Closing") shall occur no later than **July 26, 2019**.

11.    Failure to Consummate Purchase by the Prevailing Purchaser

If an Auction is conducted, the party with the Qualified Bid that is next highest or otherwise best to the Prevailing Bid at the Auction, as determined by the Trustee (in consultation with Capital Holdings), shall be required to serve as a back-up bidder for the Assets (the "Back-Up Bid" and the "Back-Up Bidder" for such Assets, respectively) and keep such bid open and irrevocable until 11:59 p.m. CDT on the date that is the earliest of: (a) such date upon which the Trustee will notify the Back-Up Bidder that the bid of the Prevailing Purchaser has actually closed; and (b) the actual closing of the Sale with the Prevailing Purchaser.

Following the Sale Hearing, if the Prevailing Purchaser fails to consummate a Sale in accordance with the Prevailing Bid because of a breach or failure to perform on the part of such Prevailing Purchaser, the Trustee (in consultation with Capital Holdings) is authorized to deem the Back-Up Bidder to be the new "Prevailing Purchaser" for the Assets and the Trustee will be authorized, but not required, to consummate a sale of the Assets to the Back-Up Bidder as contemplated by the Back-Up Bid without further order of the Court. In such case: (a) the defaulting Prevailing Purchaser's deposit shall be forfeited to the Trustee; and (b) all parties in interest and the Trustee specifically, reserve the right to seek all available damages from the defaulting Prevailing Purchaser.

Except as otherwise provided herein, all deposits plus interest that accrued thereon shall be returned to each bidder not selected by the Trustee as the Prevailing Purchaser or the Back-Up Bidder by no later than the fifth (5th) business day following entry of the Sale Order. The deposit of the Back-Up Bidder shall be held by the Trustee until the earliest of two (2) business days after: (a) 30 days after the date of the Sale Hearing; (b) such date upon which the Trustee will notify a Back-Up Bidder that the bid of the Prevailing Purchaser has closed; and (c) the closing of the Sale with the Prevailing Purchaser.

12.    "As Is, Where Is"/Free and Clear Sale

11

The Assets shall be sold on a "quitclaim", "as is, where is" basis and without representations or warranties of any kind, nature or description by the Trustee, her agents, professionals, attorneys, representatives, employees, officers, shareholders, or directors, or anyone acting on their behalf or at their direction except to the extent expressly set forth in any asset purchase agreement between the Trustee and the Prevailing Purchaser (or Back-Up Bidder, as the case may be).

Except as may be otherwise provided in the Prevailing Bid, all of the Trustee's, the Estate's and the Debtor's right, title and interest in and to the Assets shall be sold free and clear of (collectively, "Interests") the following:  all claims (as defined in section 101(5) of the Bankruptcy Code), liens, interests (including any alleged ownership interests disallowed or deemed disallowed by the Court), encumbrances, rights, remedies, restrictions, liabilities, leasehold interests, and contractual commitments of any kind or nature whatsoever, whether at law or in equity, including (subject to Court approval)  all rights or claims based on any successor or transferee liability, all environmental claims, all change in control provisions, all rights to object or consent to the effectiveness of the transfer of the Assets to the Prevailing Purchaser,  all pursuant to (and subject to the provisions of) the order approving the Sale to the Prevailing Purchaser as may be entered by the Court at the Sale Hearing (the "Sale Order").

The Prevailing Purchaser shall provide the Trustee with sufficient information to enable the Trustee to request that the Court find in the Sale Order that the Prevailing Purchaser is a "good faith" purchaser for purposes of Section 363(m) of the Bankruptcy Code.  The Sale Order shall also provide that the 14-day stay periods in Bankruptcy Rules 6004(h) and 6006(d) are waived, and each Qualified Bidder and Prevailing Purchaser shall be deemed to have consented to such waiver so that the Closing can occur  as early as entry of the Sale Order and in any event no later than the Closing Date.

13.    Reservation of Rights; Consent to Jurisdiction

The Trustee reserves her rights, in the exercise of her fiduciary obligations (in consultation with Capital Holdings): (a) to modify the Bid Procedures or impose, at or prior to the Auction, different and/or additional terms and conditions on the sale of the Assets; and (b) to announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction; provided that, in the case of  (a) and (b), such modifications or rules are not inconsistent in any material respect with the Bid Procedures or any Stalking Horse Bid.

**All Qualified Parties, Qualified Bidders, and all such Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court to enter an order or orders, which shall be binding in all respects, in any way related to the Trustee and the Assets, and have waived any right to a jury trial in connection with any disputes relating to the Trustee, the Chapter 7 Case, the Bid Procedures, any Bidder Agreement, the Auction, or the construction and enforcement of any Bidder Agreement.**

12

## EXHIBIT B

### UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 19-10236 |
| Johnson Publishing Company, LLC, | ) | |
| | ) | Hon. Jack B. Schmetterer |
| Debtor. | ) | |
| | ) | |
| | ) | |

### NOTICE OF (I) AUCTION FOR SALE OF DEBTOR'S ARCHIVE COLLECTION AND (II) HEARING TO APPROVE SALE OF ARCHIVE ASSETS TO PREVAILING BIDDER

**YOU ARE HEREBY NOTIFIED THAT** on June ___, 2019, the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Court"), which is overseeing the above-referenced Chapter 7 bankruptcy case of Johnson Publishing Company, LLC (the "Debtor"), entered the attached order [Dkt. ___] (i) authorizing an auction for the sale of the Debtor's Archive Assets (defined below), (ii) scheduling a hearing for approval of a sale of the Archive Assets to the highest or otherwise best bidder that may emerge from such auction, (iii) approving bid procedures to govern such auction, (iv) authorizing certain bid protections for a potential stalking horse bidder, and (v) approving the forms and manner of notices for such auction, sale hearing and related matters (the "Scheduling and Bid Procedures Order");

**YOU ARE FURTHER NOTIFIED** that Miriam R. Stein, Esq., not individually but solely as the Chapter 7 trustee for the bankruptcy estate of Johnson Publishing Company, LLC (the "Trustee"), is in the possession, custody or control of the Debtor's iconic archive collection of images and audio and video media documenting African-American History for the last seventy years, including without limitation the items listed in the Debtor's filed Schedules as Dkt. Nos. 37-4 (Rider to Schedule A/B-42.1; all 174 pages), 37-6 (Rider to Schedule A/B-42.3; page 3 of 4) and 37-7 (Rider to Schedule A/B – 42.5; page 3 of 3), together with certain equipment and other tangible property used in connection with the archive (collectively, the "Archive Assets" or the "Assets");

**YOU ARE FURTHER NOTIFIED** that the Trustee intends to hold an **Auction for the Sale of the Archive Assets, on July 17, 2019 at 10:00 A.M. Central Daylight Time** at the law offices of her counsel, Fox Swibel Levin & Carroll LLP, 200 West Madison, Suite 3000, Chicago, Illinois 60606 (or such other time and location as the Trustee may elect upon notice to interested bidders and other persons entitled to attend such auction, in accordance with the Bid Procedures defined hereinbelow) (the "Auction");

19-10236:70.4:Motion to Sell Property Free and Clear of Liens 363(f):Proposed Order Entered: 6/13/2019 3:24:58 PM by:N. Reid Page 19 of 22

**YOU ARE FURTHER NOTIFIED** that the Archive Assets will be sold on an "as is, where is" and "quitclaim" basis, without representation or warranty as to condition, merchantability or fitness for a particular purpose as to any item in the Archive Assets, except as otherwise expressly agreed by the Trustee in a fully executed asset purchase agreement with the winning bidder at the Auction;

**YOU ARE FURTHER NOTIFIED** that the Trustee shall, through her liquidation consultant and auctioneer Hilco Streambank ("Hilco"), conduct the Auction in accordance with the "Bid Procedures" which are appended hereto as **Exhibit A** and were approved by the Court pursuant to the Scheduling and Bid Procedures Order;

**YOU ARE FURTHER NOTIFIED THAT** persons or entities interested in placing a bid on the Assets (i) should review the Bid Procedures attached hereto for the procedures and details on how to place a qualified bid,   (ii)   may contact Richelle Kalnit (rkalnit@hilcoglobal.com) or Ben Kaplan (bkaplan@hilcoglobal.com) of Hilco, at (212) 610 5601, with any specific questions on the Bid Procedures, and (iii) must file and serve their bids by **5:00 PM Central Daylight Time on July 15, 2019**, in accordance with the notice procedures set forth in paragraph 5 of the Bid Procedures, in order to be permitted to bid at the Auction;

**YOU ARE FURTHER NOTIFIED THAT** (i) the Court will hold a hearing on **Tuesday, July 23, 2019 at _____ CDT** (the "Sale Hearing") on approval of any proposed sale of the Debtor's, the Estate's and the Trustee's interest in the Archive Assets (the "Sale") to the person or entity offering the highest or otherwise best bid for the Archive Assets as the Trustee may accept at the Auction (the "Prevailing Purchaser"), and (ii) the Trustee will at the Sale Hearing request that the Court enter an order (a) approving the Sale to the Prevailing Purchaser free and clear of any and all liens, claims, encumbrances and interests whatsoever (including any and all alleged competing ownership interests in the Archive Assets disallowed or deemed disallowed by the Court pursuant to the Court's ownership claims bar date order [Dkt. 67]), (b) finding that the Prevailing Purchaser is a "good faith purchaser" for purposes of Section 363(m) of the Bankruptcy Code and (c) waiving the 14-day waiting period under Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d), so that the closing of the Sale may occur as early as the date of entry of such order approving the Sale  (the "Sale Order");

**YOU ARE FURTHER NOTIFIED** that (i) separate notices will be sent by the Trustee to counterparties to the Debtor's executory contracts and unexpired leases regarding the Trustee's calculation of amounts required to cure any defaults under such contracts and leases and the right of any such counterparty to object to any proposed assumption or assignment of its contract or unexpired lease to any Prevailing Purchaser and (ii) at the Sale Hearing the Court will address any subsequent motion of the Trustee to assume and assign to a Prevailing Purchaser the executory contracts or unexpired leases that such Prevailing Purchaser desires to have assigned to it in connection with the Sale, as well as any objections thereto; and,

**YOU ARE FURTHER NOTIFIED THAT** (i) the Auction results and a proposed Sale Order will be filed with the Court on or before **Friday, July 19, 2019,** and (ii) *any and all objections to the Sale or the proposed Sale Order* must be filed with the Court, and served on

and received by Miriam Stein, Esq., as the Trustee (mstein@chuhak.com), Chuhak & Tecson, P.C., 30 South Wacker, Suite 2600, Chicago, IL 60606; her counsel N. Neville Reid, Esq. (nreid@foxswibel.com), Fox, Swibel, Levin & Carroll LLP, 200 West Madison, Suite 3000, Chicago, IL 60606; Brian Greer, Esq. as counsel for Capital Holdings V, LLC, a lienholder with respect to the Archive (brian.greer@dechert.com), Dechert LLP, 1095 Avenue of the Americas, New York, NY 10036-6797; the Debtor (Linda Johnson Rice, President, Johnson Publishing Company, 200 South Michigan Ave., Chicago, IL 60604); and the U.S. Trustee, Patrick Layng, Esq., 219 South Dearborn, #873, Chicago, IL 60604, by no later than **5:00 PM Central Daylight Time on Monday, July 22, 2019.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION BY THE APPLICABLE OBJECTION DEADLINE SHALL BE DEEMED A CONSENT TO, AND A BAR TO THE ASSERTION BY SUCH PERSON OR ENTITY OF ANY OBJECTION TO, THE PROPOSED SALE OR SALE ORDER, OR THE TRUSTEE'S CONSUMMATION AND PERFORMANCE OF THE RELEVANT SALE AGREEMENT(S) (INCLUDING, WITHOUT LIMITATION, THE DEBTOR'S TRANSFER OF ANY OF THE ASSETS AND ASSUMPTION AND ASSIGNMENT OF ANY EXECUTORY CONTRACTS OR UNEXPIRED LEASES OF THE DEBTOR, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS).**

June ___, 2019                              BY ORDER OF THE COURT

**EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 19-10236 |
| Johnson Publishing Company, LLC, | ) | |
| | ) | Hon. Jack B. Schmetterer |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |

**NOTICE OF (I)  TRUSTEE'S CALCULATION OF CURE COSTS RELATED TO
DEBTOR'S EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (II) HEARING
ON UNRESOLVED OBJECTIONS TO CURE COSTS AND (III) RIGHT OF
COUNTERPARTIES TO OBJECT TO TRUSTEE'S CURE COST DETERMINATION**

  **YOU ARE HEREBY NOTIFIED THAT** on June ___, 2019, the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Court"), which is overseeing the above-referenced Chapter 7 bankruptcy case of Johnson Publishing Company, LLC (the "Debtor"), entered the attached order [Dkt. ___] (i) authorizing an auction for the sale of the Debtor's Archive Assets (defined below), (ii) scheduling a hearing for approval of a sale of the Archive Assets to the highest or otherwise best bidder that may emerge from such auction, (iii) approving bid procedures to govern such auction, (iv) authorizing certain bid protections for a potential stalking horse bidder, and (v) approving the forms and manner of notices for such auction, sale hearing and related matters (the "Scheduling and Bid Procedures Order");

  **YOU ARE FURTHER NOTIFIED** that Miriam R. Stein, Esq.,  not individually but solely as the Chapter 7 trustee for the bankruptcy estate of Johnson Publishing Company, LLC (the "Trustee"), is in the possession, custody or control of the Debtor's iconic archive collection of images and audio and video media documenting African-American History for the last seventy years, including without limitation the items listed in the Debtor's filed Schedules as Dkt. Nos. 37-4 (Rider to Schedule A/B-42.1; all 174 pages), 37-6 (Rider to Schedule A/B-42.3; page 3 of 4) and 37-7 (Rider to Schedule A/B – 42.5; page 3 of  3), together with certain equipment and other tangible property used in connection with the archive (collectively, the "Archive Assets" or the "Assets");

  **YOU ARE FURTHER NOTIFIED** that the Trustee is in the process of preparing the Archive Assets for sale at an auction to be held on July 17, 2019 (the "Auction") and that bidders at such Auction may propose in their bid that certain executory contracts or unexpired leases of the Debtor be assumed by the Trustee and assigned to them as part their bid pursuant to Section 365 of the Bankruptcy Code (the "Section 365 Agreements");

**YOU ARE FURTHER NOTIFIED** that in preparation for the Auction and pursuant to the Scheduling and Bid Procedures Order, and in reliance on the Debtor's records and Schedules, the Trustee has attached hereto as **Schedule 1** the amounts that would need to be paid by an assignee of a Section 365 Agreement in order to cure any defaults thereunder, as a condition of any such assignment pursuant to Section 365(b)(1) of the Bankruptcy Code (the "Cure Costs" and such schedule the "Cure Costs Schedule");

**YOU ARE FURTHER NOTIFIED** that you are listed as a counterparty to a Section 365 Agreement as indicated on the Cure Cost Schedule, and you have the right to object to the Cure Costs related to your respective Section 365 Agreement by filing a written objection thereto on or before **July 8, 2019** and serving a copy thereof on the Trustee and her counsel so that it is received by them by that date (the "Cure Cost Objections"); and,

**YOU ARE FURTHER NOTIFIED** that the Court will hold a hearing on any unresolved Cure Cost Objections on **July 11, 2019 at _____ AM,** at which you may appear and be heard.

June ___, 2019                                  BY ORDER OF THE COURT