UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Bankruptcy No. 19 B 10236 |
| J PUBLICATION COMPANY, formerly known as ) | Chapter 7 |
| Johnson Publishing Company, LLC, ) | Judge Donald R. Cassling |
| ) | |
| Debtor. ) | |

### ORDER ESTIMATING CLAIM

On February 27, 2024, Miriam Stein Granek (the "Trustee"), as Chapter 7 Trustee of the estate of J Publication Company[1] (the "Debtor"), filed a motion under 11 U.S.C. § 502(c) to estimate the bankruptcy estate's liability for a potential tax penalty not yet asserted by the Internal Revenue Service ("IRS"). Resolution of this issue is the last issue that the Trustee must resolve before distributing assets to creditors of the estate.

The governmental claims bar date in this case has long since expired and the IRS failed to file a tax-penalty claim against the Debtor, so why can't the Trustee begin making distributions immediately? Because the federal statute of limitations for the IRS to assert such a claim does not expire until September of 2025, and the IRS has refused to respond to the Trustee's repeated requests to state whether it will assert a tax-penalty claim against the Debtor sometime before then.

Caught in no-man's land between an expired bankruptcy claims bar date and an unexpired federal tax-claim statute of limitations, the Trustee wishes to avoid either incurring personal liability to the IRS or having to claw back distributions from creditors should the IRS finally decide to assert a tax-penalty claim against the Debtor. So why not solve this problem by asking this Court to determine the merits of the IRS's potential tax-penalty claim against the Debtor? The short answer is that the IRS has not yet asserted a tax-penalty claim, so there is no existing claim on which to rule. Assuming that this Court would have the jurisdiction to rule under Section 505 of the Bankruptcy Code, ruling on the merits of a claim that has not been asserted would involve issuing an advisory opinion, which this Court may not do. *See In re J Publ'n. Co.*, 656 B.R. 221, 224-25 & n.2 (Bankr. N.D. Ill. 2023).

But the Bankruptcy Code provides another potential remedy to the Trustee—the statutory power to estimate contingent or unliquidated claims against the Debtor. Significantly, this estimation power does not require the bankruptcy court to determine the *merits* of contingent or unliquidated claims. Instead, it allows the court to *estimate* how a court of competent jurisdiction would rule on the merits of those claims. It then uses that estimate as the numerical basis for calculating and beginning distributions to creditors. This estimation tool is so powerful that its

---

[1] The Debtor was formerly known as Johnson Publishing Company, LLC.

employment is subject to a significant limitation—it may not be deployed unless the bankruptcy court first determines that waiting for a final ruling on the merits of the claim from a court of competent jurisdiction would unduly delay distribution of assets in the bankruptcy case.

The IRS argues both that this Court lacks jurisdiction to estimate its potential tax-penalty claims and that it is protected from such a motion by sovereign immunity. But a recent decision by the Seventh Circuit makes clear that Congress has waived sovereign immunity for the IRS under Section 106(a) of the Bankruptcy Code. And whether this Court has jurisdiction to conduct a claims-estimation process is dependent upon whether it has "related-to" jurisdiction under Title 28 of the United States Code. For the reasons discussed below, the Court concludes that it does have such jurisdiction. The Court also concludes that the statutory predicates for conducting a claims-estimation proceeding have been met. Finally, the Court agrees with the Trustee that the IRS's potential tax-penalty claims should be estimated at zero.

## BACKGROUND

This is the third motion that the Trustee has brought on behalf of the Debtor's estate in an attempt to address the estate's potential liability for making late filings of FinCEN Form 114, a Report of Foreign Bank and Financial Accounts (hereinafter, "FBAR"). An FBAR contains information required for each calendar year during which a tax-payer has had a financial interest in, or signature authority over, a financial account in a foreign country that exceeds $10,000 in the aggregate. (Mot., at ¶ 2.)

The Debtor filed its bankruptcy petition on April 9, 2019. On June 7, 2019, the Court entered a Notice Fixing Time for Filing Claims, listing among other deadlines that governmental unit creditors had until October 7, 2019, to file their claims. (*See* Dkt. No. 65.) On November 10, 2020, the Court amended that Order to allow the IRS to file its tax-penalty claims by or before February 15, 2021. That extension contained the following warnings:

> ANY TAX CLAIM RECEIVED AFTER THE TAX CLAIMS BAR DATE, OR WHICH IS NOT FILED AT ALL, SHALL BE DISALLOWED BY THE BANKRUPTCY COURT. ALL TAX CLAIMS THAT ARE NOT TIMELY FILED IN ACCORDANCE WITH THESE PROCEDURES SHALL BE TERMINATED AND FOREVER BARRED. TAX CLAIMS NOT TIMELY FILED SHALL BE DEEMED WAIVED AS AGAINST THE TRUSTEE AND THE BANKRUPTCY ESTATE OF [THE DEBTOR].

(Dkt. No. 371, at ¶ 6.) On December 9, 2021, the IRS filed a proof of claim, asserting various tax claims other than the tax-penalty claims at issue in the current motion. The Trustee objected to this claim, and, on November 22, 2022, the Court sustained the objection.[2] (*See* Dkt. No. 576.)

---

[2] The Order sustaining The Trustee's objection provides in part as follows:
  [The IRS's claim] is hereby allowed as a priority claim in the amount of $216,641.27 pursuant to Section 507(a)(8)(A) of the Bankruptcy Code.

Turning now to the background of the potential tax-penalty issue, that issue was uncovered by the Trustee's tax professional, Alan D. Lasko ("Lasko"). In analyzing the Debtor's tax situation for the Trustee, he determined that the Debtor had been required to file FBARs for calendar years 2015, 2016, 2017, and 2018. He notified the Trustee of that fact and then promptly filed the requisite FBARs for those years. He accompanied each filing with a statement of reasonable cause stating why he believed that no penalties should be assessed for the late-filed forms. Through his Declaration in support of the Trustee's motion, Lasko summarized the statement of reasonable cause he made to the IRS as follows: "The Debtor is not liable for any tax as a result of the Form 114 filing[s] because, to the best of [his] knowledge, any income included in foreign bank accounts were previously reported to the IRS, and the IRS has not responded to deny the reasonable cause assertion." (Mot., Ex. A, at ¶ 8.)

Lasko subsequently informed the Trustee that the FBAR for the 2015 year had been timely filed prior to the commencement of the Debtor's bankruptcy case. As a result, the Trustee's current motion only seeks estimation of FBAR penalty claims for years 2016-2018, requesting that they each be estimated to be zero.

The Trustee notes that these potential FBAR penalty claims are governed by a six-year statute of limitations. *See* 31 U.S.C. § 5321(b)(1) ("The Secretary of the Treasury may assess a civil penalty . . . at any time before the end of the 6-year period beginning on the date of the transaction with respect to which the penalty is assessed."). Therefore, any potential FBAR penalty relating to the late-filed 2016 Form 114 would have already expired on October 15, 2023, and the potential penalties for 2017 and 2018 will expire on October 15, 2024, and October 15, 2025, respectively. (Mot., at ¶¶ 24 & 25.)

The Trustee has wrapped up all other matters in the case and is ready to calculate and begin distributions to creditors, once she has determined the amount, if any, she needs to allocate to the IRS tax-penalty claims. While she has repeatedly attempted to resolve this issue with the IRS, the IRS has been unwilling to stipulate that it will not impose FBAR penalties against the Debtor's estate in the future.

The Trustee argues that her statutory duty requires her to close the estate as expeditiously as possible. *See* 11 U.S.C. § 704(a)(1) ("The Trustee shall . . . close such estate as expeditiously as is compatible with the best interests of the parties in interest[.]."). Closing this estate requires

---

The balance of [the IRS's claim], in the amount of $38,967.97 as a general unsecured claim, is hereby disallowed.

This Court shall retain jurisdiction to hear and determine all matters arising from the implementation or interpretation of this Order.

(Dkt. No. 576.)

the payment of distributions to creditors holding over $23 million in claims,[3] and making those distributions expeditiously would require estimation of any potential FBAR penalty claims. Additionally, the Trustee obviously wishes to avoid any risk of personal liability in the event that distributions are made to creditors and the estate is thereafter assessed with an FBAR penalty. *See In re Markos Gurnee P'ship*, 182 B.R. 211, 218 (Bankr. N.D. Ill. 1995), *aff'd sub nom. State of Ill., Dep't of Rev. v. Schechter*, 195 B.R. 380 (N.D. Ill. 1996) (collecting cases involving exceptions to personal immunity of trustees and receivers).

In its response, the IRS first argues that this Court lacks jurisdiction to estimate the tax-penalty claims. In support of that argument, the IRS claims that any FBAR penalties under 31 U.S.C. § 5321(a)(5) are merely "hypothetical," because "[t]he United States has assessed no FBAR penalties against the [D]ebtor, its bankruptcy estate, or [the Trustee], nor has it threatened to do so." (Resp. at ¶¶ 2-3.) The IRS further notes that it has not filed a proof of claim nor a request for payment for any such claims. (*Id.* at ¶ 3.) Accordingly, it argues that there is no case or controversy with respect to this matter under Article III of the United States Constitution or 28 U.S.C. §§ 1334 and 157. Finally, the IRS argues that the Trustee's motion does not fall within any waiver of the United States' sovereign immunity under § 106. The IRS therefore urges the Court to deny the motion for want of jurisdiction and in recognition of its sovereign immunity.

In her reply, the Trustee denies that the possibility of later-filed FBAR penalty claims by the IRS is an irrelevant hypothetical outcome: "Creditors face the very real possibility that the IRS will decide to assess penalties at a later date, thus imperiling their distributions." (Reply, at ¶ 1.) The Trustee argues that the harm to creditors due to such peril or costs associated with a delay in payment, coupled with the potential for personal liability in the event that she makes distributions prior to an assessment of an FBAR penalty, provide ample justification for the Court to render a decision in her favor and that such a ruling would be in the best interest of the creditors of the Debtor's estate. Additionally, the Trustee argues that § 106(a)(1) provides an unambiguous waiver of sovereign immunity with respect to Section 502 of the Bankruptcy Code.

## DISCUSSION

The Seventh Circuit recently issued an opinion which requires rejection of both the IRS's sovereign-immunity claim and its argument that this Court lacks jurisdiction to conduct a claims estimation under § 502. That opinion, *Bush v. U.S.*, 100 F.4th 807 (7th Cir. 2024), "present[ed] the question whether a bankruptcy court can determine the amount of a debtor's tax obligations, when the debtor is unlikely to pay them." *Id.* at 809.

The debtors in that case were trying to reduce a tax penalty which the IRS had asserted against them. They asked the bankruptcy court to do so under § 505 of the Bankruptcy Code,

---

[3] The Claims Register reflects total secured claims of $3,453,609.13 and total priority claims of $538,310.71. According to the Court's Summary of the Claims Register in this case, the total amount claimed overall is $23,754,287.68, which includes general unsecured claims.

arguing that § 505 conferred jurisdiction upon the bankruptcy court to reduce the tax penalty that the IRS had assessed. The IRS responded that the bankruptcy court could only make that determination if it had "related-to" jurisdiction (*i.e.*, if its ruling "could have affected the allocation of assets among the creditors with outstanding claims"). *Id.* at 813. The bankruptcy court agreed with the debtors, but the district court agreed with the IRS. The Seventh Circuit generally agreed with the IRS but held that neither the lower courts nor the parties had analyzed the creditor impact for the appropriate time period—when the dispute initially arose. So, the case was remanded for the district court to decide whether it had "related-to" jurisdiction based upon a proper analysis of creditor impact.

For purposes of the case pending before this Court, the *Bush* decision is most interesting for its illuminating discussion of bankruptcy jurisdiction and sovereign immunity:

> [While] we grant that other circuits writing about § 505 have used a "jurisdictional" characterization . . .[,] we do not see what § 505 has to do with jurisdiction, a word it does not use. Section 505 simply sets out a task for bankruptcy judges. Almost the entirety of the Bankruptcy Code prescribes tasks for bankruptcy judges. . . . Those and other sections in the Code are unrelated to jurisdiction, just as few of the many thousand substantive rules in the United States Code as a whole concern jurisdiction.
>
> The Supreme Court insists that judges distinguish procedural and substantive rules from jurisdictional ones. . The rule in § 505 is on the non-jurisdictional side. . . . [T]he Supreme Court has restricted the category of laws that can be called jurisdictional, and we must follow its current understanding of that term.
>
> Most genuine jurisdictional rules appear in Title 28, the Judicial Code, and that's true of bankruptcy too. The Bankruptcy Code itself tells us this. Section 105(c) [of Title 11] reads: "The ability of any district judge or other officer or employee of a district court to exercise any of the authority or responsibilities conferred upon the court under this title shall be determined by reference to the provisions relating to such judge, officer, or employee set forth in title 28." Bankruptcy judges act as officers of the district courts, . . . so § 105(c) means that bankruptcy jurisdiction depends on Title 28. . . .
>
> . . .
>
> The United States protests that sovereign immunity negates any jurisdiction based on [28 U.S.C.] § 1334, but 11 U.S.C. § 106(a)(1) waives that defense for subjects within § 505. What is more, we have held that sovereign immunity does not affect subject-matter jurisdiction. *See United States v. Cook County*, 167 F.3d 381 (7th Cir. 1999).

> Section 1334 creates jurisdiction for three potentially relevant categories of disputes: those "arising in" bankruptcy litigation, those "arising under" the Bankruptcy Code, and those "related to" the resolution of the bankruptcy proceeding.

*Id.* at 809-11 (citations omitted).

Under *Bush*, the IRS's sovereign immunity argument fails, because the waiver of sovereign immunity under § 106(a)(1) explicitly applies just as much to proceedings under § 502 as it does to proceedings under § 505. *Id.* at 811.

However, the IRS's jurisdictional argument requires a more nuanced response under *Bush*, due to the differences between proceedings under § 502 and those under § 505. As *Bush* reminds us, bankruptcy courts have jurisdiction to hear disputes that (1) arise in bankruptcy litigation, (2) arise under Title 11, or (3) relate to the resolution of a bankruptcy case. 28 U.S.C. § 1334; *Bush*, 100 F.4th at 811. For the reasons set forth in *Bush*, this Court has neither "arising-in" nor "arising-under" jurisdiction to conduct a claims-estimation procedure in this case. But this Court has "related-to" jurisdiction if the Court determines that a claims-estimation procedure would have a potential effect on creditors of the Debtor's bankruptcy estate. *See id.* at 813. As discussed below, the Court concludes that estimating the IRS's potential tax-penalty claims would have much more than a potential effect on creditors of this estate. Instead, estimating the claims so as to permit distribution now, rather than fifteen months from now, would have an actual and significant economic impact upon creditors of the estate.

Bear in mind that, if this Court were not to estimate the IRS's potential tax-penalty claims under § 502, creditors holding over $23 million in claims would be forced to wait almost fifteen months to begin receiving distributions on their claims. The lost-opportunity costs of such a lengthy delay would not just have a "potential" impact on the creditors of this estate. Those costs would undeniably occur and would likely be significant. That impact is, by itself, sufficient to confer "related-to" jurisdiction upon this Court to estimate the IRS's potential tax-penalty claims.

Having determined that this Court has "related-to" jurisdiction to estimate the IRS's potential tax-penalty claims, does it have the statutory authority to do so? Under § 502(c), the Court may not proceed to estimate claims unless it first determines that two statutory predicates have been established: (1) those claims are contingent or unliquidated; and (2) failing to estimate the claims would "unduly delay" distributions to creditors. 11 U.S.C. § 502(c); *In re Perry*, 425 B.R. 323, 342 n.11 (Bankr. S.D. Tex. 2010).

But first things first. Does the fact that the IRS has not yet asserted a tax-penalty claim in this case mean that there is no "claim" against the Debtor that is capable of estimation under § 502? The answer to that question is clearly "no." "Claim" in bankruptcy is defined by statute as: "(A) *right* to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) *right* to

an equitable remedy for breach of performance if such breach gives rise to a *right* to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5) (emphasis added).  The predicates for establishing that such claims have arisen in bankruptcy are (1) that all "transactions" or acts necessary for liability have occurred, and (2) for governmental claims, that there was some pre-petition relationship, "such as contact, exposure, impact, or privity" between the United States and the debtor such that the government is able to "fairly contemplate" that it might have a claim against the debtor. *See Epstein v. Official Comm. of Unsecured Creditors of Estate of Piper Aircraft Corp.*, 58 F.3d 1573, 1577 (11th Cir. 1995); *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1274-77 (5th Cir. 1994); *In re Jensen*, 995 F.2d 925 (9th Cir. 1993); *In re Chateaugay Corp.*, 944 F.2d 997 (2d Cir. 1991).

It is undisputed that all the predicates for establishment of IRS tax-penalty claims have occurred in this case, permitting the IRS to "fairly contemplate" that it might have such claims against the Debtor.  Whether or not it would be *appropriate* for the IRS to assert such claims under the circumstances of this case is not the point; the fact that it possesses the "right" to make such claims is what counts.[4]

Now, on to the statutory predicates for application of § 502 under the facts of this case: The first predicate has been met, because the tax-penalty claims are obviously contingent.  That is, they are dependent upon the IRS's discretion as to whether or not they will be asserted in the future.[5]  While the IRS argues that the tax-penalty claims have not yet been asserted and are merely hypothetical, the IRS has adamantly refused all entreaties by the Trustee to state whether it will assert those claims in the future.  These facts are sufficient to establish that its tax-penalty claims are contingent.

The claims are also unliquidated, because the IRS has refused to provide any information to the Trustee whatsoever about whether it will file such claims and, if so, in what amount.

The first two statutory predicates to employment of § 502 are therefore satisfied.  Is it also true that a fifteen-month delay is "undue" under the statute?  This Court concludes that it is, for the following reasons:  First, over $23 million in claims are awaiting payment.  The lost-opportunity cost of delaying payment for so long would be unduly prejudicial to creditors.  Second, this is not a situation in which the IRS needs any additional information to determine either (1)

---

[4] In making this statement, the Court is not making a finding that the governmental bar date set in this case trumps the IRS six-year statute of limitations for asserting FBAR penalties, although it considers that issue as part of its claims estimation, as discussed below.

[5] The Bankruptcy Code does not define "contingent" with respect to claims under 11 U.S.C. § 101(5). *In re Benanti*, No. 15-71018, 2018 WL 1801194, *6 (Bankr. C.D. Ill. Apr. 13, 2018).  Courts consider all the facts and circumstances existing at the time at which its determination is made in deciding whether a claim is contingent, including the nature of the claim itself.  *See id.* at *7 & 12 ("A guaranty claim is contingent unless it is in default.").

whether it would be justified in asserting such claims; and (2) if so, in what amount. Mr. Lasko, the Trustee's accountant, long ago gave the IRS all the information it needed to make those determinations. The Court cannot conceive, nor has the IRS offered, any legitimate rationale for making these creditors wait for payment of their claims for an additional fifteen months.

Finally, having concluded that this Court has both jurisdiction and the statutory authority to conduct an estimation of claims, what is the appropriate amount of that estimation? The IRS has offered no guidance on this issue, merely arguing that there is no factual record establishing the amount of the FBAR penalties. For the following reasons, the Court agrees with the Trustee that the estate's liability to the IRS arising from any FBAR penalties should be estimated to be zero for purposes of distribution:

> First, the Court finds Lasko's Declaration that no tax penalties would be appropriate under these circumstances to be persuasive. (*See* Mot., Ex. A.) As detailed in that Declaration, the estate promptly filed FBARs for the appropriate years, as soon as the Trustee discovered that such filings had been required but not made prior to bankruptcy.

> Second, the IRS has had more than enough time to review matters related to FBAR penalties within the more than two years since the Trustee filed the first corrective FBARs on behalf of the estate. There should be no need for future FBARs, because the Debtor is no longer in business. Hence, the IRS has, and has had for some time, all the information it needs to formulate and assert any tax-penalty claims. The fact that it is has not done so strongly suggests that it will not do so in the future.

> Third, the IRS itself has emphasized its belief that the penalties are hypothetical and have not been filed prior to the governmental claims bar date. While not dispositive as to the IRS's intent to file tax-penalty claims in the future, these statements provide additional compelling evidence that the IRS is unlikely to do so in the future.

> Finally, while not resolving today the issue of whether the governmental claims bar date set in this case trumps the IRS's six-year statute of limitations for asserting FBAR tax-penalty claims, the costs and risks to the IRS and the estate of litigating that issue also support the Court's estimation of those claims.

Based on all the information thus available to it, the Court concludes that any FBAR penalty claims are not reasonably foreseeable to be forthcoming and are therefore estimated to be zero.

## CONCLUSION

For the foregoing reasons, the Trustee's motion is granted, and any FBAR penalty claims are estimated to be zero for purposes of distribution.

**ENTERED:**

**DATE:** June 3, 2024

*Donald R. Cassling*
**Donald R. Cassling**
**United States Bankruptcy Judge**